523 A.2d 1199

Twining Village, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs February 23, 1987, to Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Edward F. Murphy,* with him, *Caroline F. Achey, McBride and Murphy,* for petitioner.

*Bruce G. Baron,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, April 9, 1987:

Twining Village (Petitioner) has petitioned for review of the decision of the Pennsylvania Department of Public Welfare (DWP) which denied part of the reimbursement claimed by Petitioner for its last three months of operation beginning July 1, 1983. We reverse.

The facts of this case are not in dispute. Petitioner, a total life care retirement community located in Bucks County, contains an eighty-two bed skilled nursing facility known as Twining Hall (Facility). The Facility participated in the Medical Assistance Program from approximately October, 1978 through September 28, 1983. As a participant in this program, the Facility received reimbursements from DPW pursuant to the DPW regulations found in its Medical Assistance Manual. The Facility was reimbursed by DPW for its final full fiscal year ending June 30, 1983. The Facility continued to operate until September 28, 1983. It did not file a final cost report with DPW within thirty days of its date of termination as required by 55 Pa. Code §1181.73(a). This final cost report would have encompassed the period of July 1, 1983 through September 28, 1983. The Facility provided 806 patient days during the period in question; and DPW reimbursed the Facility $33,537.66, or $41.61 per diem. The Facility appealed to the Office of Hearings and Appeals on the ground that it was entitled to an additional $7.11 per diem for depreciation and interest on capital indebtedness. DPW argued that 55 Pa. Code §1181.73(b) places a cap on the final per diem rate for reimbursement when a facility fails to file a cost report within the required thirty days and that the final per diem rate ($41.61) includes depreciation and interest. The hearing

officer recommended that the Petitioner's appeal be sustained and that DPW be directed to reimburse the Facility at the rate of $48.72 ($41.61 + $7.11) per diem for the period in question. The Director of the Office of Hearings and Appeals rejected this recommendation and held in favor of DPW's original interpretation of its regulation. Upon reconsideration, the determination of the Office of Hearings and Appeals was affirmed. This appeal followed.

The sole issue before us is whether DPW's interpretation of its regulation, 55 Pa. Code §1181.73(b), as precluding Petitioner from receiving reimbursement for depreciation and interest on capital indebtedness, is correct. An agency's interpretation of its own regulation will be given judicial deference where it is not clearly erroneous or inconsistent with the regulation interpreted and where it is consistent with the policy and objectives of the authorizing statute. *Mansion Nursing and Convalescent Home, Inc. v. Department of Public Welfare,* 96 Pa. Commonwealth Ct. 138, 506 A.2d 1343 (1986); *Michael Manor, Inc. v. Department of Public Welfare,* 88 Pa. Commonwealth Ct. 583, 490 A.2d 957 (1985).

Our review shows that DPW's regulations demonstrate a consistent policy of differentiating between operating costs, and depreciation and interest. Pertinently, 55 Pa. Code §1181.73, provides:

> (a)  A facility that enters into a termination agreement or agreement of sale is required to file a cost report with the Department within 30 days after the effective date of the termination or transfer and is required to provide financial records to the Department for auditing.
>
> (b)  Except for non-State operated intermediate care facilities for the mentally retarded, when a final cost report is not submitted, the Depart-

ment will make final cost settlement for that fiscal year at the last final *per diem rate* for which the Department has audited costs for that facility, provided that the rate established will not exceed the maximum *per diem rate ceiling* in effect when the facility was last audited.

(Emphasis added in part.)

Because a timely final cost report was not submitted, we must determine whether the term "per diem rate ceiling" would preclude the payment of depreciation and interest costs. While there is no definition in DPW's regulations of "per diem rate ceiling," the definitions of "final per diem rate" and "group ceiling" appear as follows in 55 Pa. Code §1181.202:

> *Final per diem rate*—The rate established by the Department after completion of an audit of the facility's year-end cost report, comprised of the facility's allowable net operating per diem rate and an efficiency incentive, if appropriate, which are subject to the limitation of the applicable group ceiling, *plus* rates for allowable depreciation and interest.

> *Group Ceiling*—The maximum *per diem* cost, excluding depreciation and interest on capital indebtedness, that may be reimbursed by the Medical Assistance Program for a facility in a specified group.

(Emphasis added in part.)

It is clear from the definitions that the "final per diem rate" consists of the Facility's allowable net operating per diem rate, subject to the applicable group ceiling, *plus* any allowable depreciation and interest, which is not subject to the group ceiling. Indeed the definition of group ceiling expressly excludes depreciation and interest. These regulations, as well as 55 Pa. Code §1181.211(a), which provides that, in addition to net op-

erating costs, allowable depreciation and interest on capital indebtedness are also reimbursable and 55 Pa. Code §1181.216, which excludes depreciation and interest from the limitations of the applicable ceiling on net operating costs, demonstrate a consistent policy of treating depreciation and interest separate from net operating costs.

DPW argues that the maximum per diem rate ceiling sets a limitation on the Facility's final per diem rate including depreciation and interest. To come to this determination DPW has interpreted 55 Pa. Code §1181.73(b) out of context with its other regulations and in a manner inconsistent with them. Pursuant to 55 Pa. Code §1181.73(b) DPW is authorized to make a final cost settlement based upon the Facility's last final per diem rate for which DPW has audited costs; that Regulation does not authorize DPW to exclude depreciation and interest from its calculation and to do so would be in conflict with other DPW regulations. We hold, therefore, that DPW's determination that the Facility was not entitled to reimbursement for depreciation and interest for the period in question was plainly inconsistent with the regulations interpreted.

Accordingly, the Department of Public Welfare's order is reversed.

## ORDER

NOW, April 9, 1987, the order of the Department of Public Welfare in the above captioned matter is hereby reversed.