550 A.2d 279

Kent Coal Mining Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued October 6, 1988, before Judges CRAIG and McGINLEY, and Senior Judge NARICK, sitting as a panel of three.

Henry McC. Ingram, Rose, Schmidt, Chapman, Duff & Hasley, with him, Thomas C. Reed, Buchanan Ingersoll, P.C., for petitioners.

Katherine S. Dunlop, Assistant Counsel, with her, Barbara H. Brandon, Assistant Counsel, for respondent.

OPINION BY JUDGE CRAIG, November 15, 1988:

Kent Coal Mining Company (Kent Coal or the company) appeals from an order of the Environmental Hearing Board (EHB or the board) that assessed a civil penalty against the company.

The issue is whether the statute that empowered the Department of Environmental Resources (DER or the department) to assess civil penalties in cases such as this modified the doctrine of finality of administrative decisions so as to permit a company to challenge the fact of the violation as well as the amount of the fine in an appeal from the assessment order, even though the company did not timely appeal from the earlier compliance order arising from the same alleged violation.

Kent Coal is a company authorized to conduct surface mining in Pennsylvania. After an inspection of a mine operated by Kent Coal, DER issued Compliance Order 85-E-420-S to Kent Coal on October 11, 1985. The compliance order alleged that Kent Coal had violated 25 Pa. Code §87.129(19), relating to air blast calibration requirements, because the company's blasting records did not record air blast calibrations for certain

blasting activities conducted during September and October of 1985. The compliance order directed Kent Coal to record air blast calibrations and to cause its next five blast detonations to be seismographed by an independent seismograph company. Kent Coal did not appeal from the compliance order at that time.

On November 1, 1985, DER notified Kent Coal that DER was proposing to assess a $420 civil penalty for the alleged violation covered by the compliance order and informed Kent Coal that it could request a conference to discuss the proposed penalty. A conference was held on January 15, 1986. DER issued a final assessment of the civil penalty against Kent Coal for its alleged violation of the air blast calibration requirement on August 4, 1986, at the same docket number as the October compliance order.

Kent Coal appealed to the Environmental Hearing Board from the August 4, 1986, order on August 29, 1986, and deposited the amount of the penalty into an escrow account. In its appeal, Kent Coal challenged both the amount of the civil penalty and the fact of the alleged violation of the air blast calibration requirement.

DER filed a "Motion to Limit Issues" contending that, because Kent Coal had elected not to appeal from the *compliance* order within thirty days of its issuance, the company was precluded from litigating the issue of whether it had violated the air blast calibration requirement in its appeal from DER's assessment of the civil penalty.

In its answer to DER's motion, Kent Coal argued that section 18.4 of the Surface Mining Conservation and Reclamation Act (SMCRA),[1] the section empower-

---

[1] Act of May 31, 1945, P.L. 1198, *as amended,* added by the Act of October 10, 1980, P.L. 835, 52 P.S. §1396.22.

ing DER to assess civil penalties for violations of that Act or of rules, regulations, orders or conditions of permits issued pursuant to that Act, and 25 Pa. Code §86.202(a), a regulation promulgated to implement section 18.4, expressly entitled the company to challenge whether a violation had occurred at the same time that it challenged the amount of the civil penalty.

EHB granted DER's motion on September 3, 1987, concluding that the statute on which Kent Coal relied was ambiguous and that the interpretation that the company advanced would violate the well established doctrine of finality of administrative decisions and would lead to an absurd result:

> The Board believes that it would be absurd to construe [the Surface Mining Conservation and Reclamation Act] as having been drafted with two separate appeal structures—one which applies to orders leading to civil penalty assessments and one which applies to orders in circumstances in which civil penalties are not assessed. Administration of such a bifurcated structure would be impossible, since a compliance order would be final only if DER never assessed a civil penalty.

Asserting that SMCRA section 18.4 must be construed in pari materia with section 1921-A(c) of the Administrative Code of 1929,[2] the board concluded that the compliance order issued by DER became final thirty days after its issuance and was not subject to later attack.

On December 3, 1987, EHB entered a final order requiring Kent Coal to pay a civil penalty of $210. This appeal followed.

---

[2] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §510-21(c).

*Section 18.4 of the Surface Mining Conservation and Reclamation Act*

Kent Coal argues that its action in not challenging DER's allegation that it violated the air blast calibration requirement until DER assessed a final civil penalty for the alleged violation was expressly authorized by both section 18.4 of SMCRA and 25 Pa. Code §86.202(a). Those sections provide in part as follows:

In addition to proceeding under any other remedy available at law or in equity for a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department may assess a civil penalty upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was willful. . . . The person or municipality charged with the penalty shall then have thirty (30) days to pay the proposed penalty in full or, if the person or municipality wishes to contest either the amount of the penalty or the fact of the violation, forward the proposed amount to the secretary for placement in an escrow account with the State Treasurer or any Pennsylvania bank, or post an appeal bond in the amount of the proposed penalty, such bond shall be executed by a surety licensed to do business in the Commonwealth and be satisfactory to the department. *If through administrative or judicial review of the proposed penalty, it is determined that no violation occurred,* or that the amount of the penalty shall be reduced, the secretary shall within thirty (30) days remit the appropriate amount to the person or municipality, with any interest accumulated by the escrow deposit.

Failure to forward the money or the appeal bond to the secretary within thirty (30) days shall result in a waiver of all legal rights to contest the violation or the amount of the penalty.

Section 18.4 of SMCRA, 52 P.S. §1396.22 (emphasis added).

(a) The person charged with the violation *may contest the penalty assessment or the fact of the violation* by filing an appeal with the Environmental Hearing Board, including with the appeal an amount equal to the assessed penalty —to be held in escrow as provided in subsection (b)—within 30 days from receipt of the assessment or reassessment.

25 Pa. Code §86.202(a) (emphasis added).

EHB relied on its conclusion that section 18.4 contained an "obvious ambiguity" to justify the board's going behind the letter of the law in order to construe its meaning. Kent Coal first argues that neither section 18.4 of the statute nor section 86.202 of the regulations contains any ambiguity, but rather clearly and unambiguously confers upon alleged violators of SMCRA the right to contest the fact of a violation at the same time they appeal the amount of any civil penalty. As the company notes, EHB is a statutorily created administrative tribunal, and, as such, it must act within the strict and exact limits defined by the statutes that it is to enforce. *Pennsylvania Human Relations Commission v. St. Joe Minerals Corp.*, 476 Pa. 302, 382 A.2d 731 (1978). We agree.

EHB appears to have concluded that the clear language of section 18.4 was ambiguous because EHB decided that following the clear language would lead to an absurd result. However, EHB was wrong. The absurdity perceived by EHB results from DER's practices with regard to compliance orders and civil penalties, not

from the procedure set forth in the statute. As happened in the present case, DER can issue a compliance order directing a company to correct certain alleged violations, and then months later impose a civil penalty based on the same alleged violations.

If a penalty were small, a company or other alleged violator might reasonably decide to pay it, rather than go to the time and expense of pursuing a challenge to the charge of violation, even if the company believed that it had not committed a violation. Of course, if the penalty were large, the company would have every motive to contest the fact of the violation if it believed that it had an adequate defense. However, because DER does not assess a civil penalty when it issues the compliance order, the alleged violator does not have this possibly crucial information when deciding whether to appeal. Kent Coal correctly perceives that the only prudent response for a person charged with a violation, under EHB's interpretation of the statute, would be to file a cautionary appeal to *any* compliance order that DER issues.

Rather than creating an absurd situation, section 18.4 and 25 Pa. Code §86.202, which implements the statute, appear to be designed to avoid the problem just described. The statute recognizes that, where DER issues a compliance order charging a particular violation and then later assesses a civil penalty based on the same alleged violation, the two actions together constitute a single "order" in terms of their effect on the alleged violator. Therefore, the statute permits the alleged violator to challenge "the fact of the violation" when he or she challenges "the amount of the penalty" —that is, when the full order has been issued.

DER readily could avoid the absurdity perceived by the EHB—the notion that a compliance order could never become final unless no civil penalty were

assessed—by including in the compliance order, in cases where the department did not plan to impose a civil penalty, a statement that no such penalty would be forthcoming. If DER wished to avoid the effective lengthening of the appeal period accomplished by section 18.4, the department could assess a civil penalty at the same time that it issued a compliance order. Otherwise, EHB is bound by the expresss language of the statute to permit an alleged violator to challenge the fact of the violation at the time when the full impact of the charge of violation first became known—when the civil penalty is assessed.

DER takes a slightly different tack from EHB on this appeal, arguing that we must read into section 18.4 of SMCRA the phrase "unless the person or municipality is otherwise precluded from challenging the fact of the violation." In DER's view, the doctrine of finality of administrative decisions otherwise precludes an alleged violator from challenging the fact of the violation in the civil penalty proceeding if it did not appeal from the initial compliance order.

The doctrine of administrative finality focuses upon the failure of a party aggrieved by administrative action to pursue his statutory appeal remedy. This court has explained the rationale and policy basis for the doctrine as follows:

> We agree that an aggrieved party has no duty to appeal but disagree that upon failure to do so, the party so aggrieved preserves to some indefinite future time in some indefinite future proceedings the right to contest an unappealed order. To conclude otherwise, would postpone indefinitely the vitality of administrative orders and frustrate the orderly operations of administrative law. This principle was expressed in Philadelphia v. Sam Bobman Department Store

Company, 189 Pa. Superior Ct. 72, 78, 149 A.2d 518, 521 (1959), in which Judge WOODSIDE stated:

'It is settled both under common law and statute that where an act creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement such remedy is exclusive and must be strictly pursued. This means that one who fails to exhaust his statutory remedies may not thereafter raise an issue which could have and should have been raised in the proceeding afforded by his statutory remedy.

. . . .

'. . . This is particularly true of special statutory appeals from the action of administrative bodies.'

*Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.,* 22 Pa. Commonwealth Ct. 280, 284, 348 A.2d 765, 767 (1975), *aff'd on this issue and remanded for further proceedings,* 473 Pa. 432, 375 A.2d 320, *cert. denied,* 434 U.S. 969 (1977).

DER argues that section 18.4 of SMCRA must be read in pari materia with section 1921-A(c) of the Administrative Code of 1929, which DER contends codifies the principle of administrative finality:

(c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken intitially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; *provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.* (Emphasis added.)

DER's quotation of this section 1921-A(c) in its brief unjustifiably omitted the phrase "in the manner hereinafter specified." The specification of manner, thus incorporated by reference into this subsection (c), appears in subsection (e), discussed below.

In DER's view, the language of section 1921-A(c), as selectively quoted in DER's brief, compels the conclusion that the findings in the department's compliance order became final thirty days after the issuance of that order and are not subject to later attack.

This argument fails because it ignores the principle that an appeal procedure created by statute—the focus of the doctrine of administrative finality—may be modified by statute. Moreover, the department's argument ignores the provisions of subsection (e) of section 1921-A:

> (e)  Hearings of the Environmental Hearing Board shall be conducted in accordance with rules and regulations adopted by the Environmental Quality Board and such rules and regulations shall include time limits for the taking of appeals, procedures for the taking of appeals, locations at which hearings shall be held and such other rules and regulations as may be determined advisable by the Environmental Quality Board.

As noted above, the regulation promulgated by the Environmental Quality Board relating to appeal procedures from DER assessments of civil penalties, 25 Pa. Code §86.202, expressly provides that the person charged with the violation "may contest the penalty assessment *or* the fact of the violation by filing an appeal with the Environmental Hearing Board . . . within 30 days from receipt of the assessment or reassessment." (Emphasis added.) Thus, the phrase "perfected his appeal in the manner hereinafter specified" in sec-

tion 1921-A(c) refers to the manner of appealing prescribed by the Environmental Quality Board under section 1921-A(e), which, in this case, is the same manner prescribed by section 18.4 of SMCRA. Rather than conflicting with or limiting section 18.4 of SMCRA, section 1921-A(c) of the Administrative Code of 1929 requires *the same procedure*. This procedure is entirely in accord with the rationale and policy basis of the doctrine of administrative finality as explained in *Department of Environmental Resources v. Wheeling-Pittsburgh Steel Corp.*, above, because the person charged with a violation of SMCRA does not know the full extent to which he is "aggrieved" by the agency action until the civil penalty resulting from that charge, if any, is assessed.

DER's position is correct in one sense. Although section 18.4 of SMCRA modifies the doctrine of administrative finality in the context of initial DER compliance orders followed later by civil penalty assessments, the section does not affect other preclusion doctrines that might apply. Thus, for example, if a coal company immediately appealed from a compliance order challenging the fact of the violation, and lost, the company would be precluded by the doctrine of collateral estoppel from challenging the fact of the violation in a later civil penalty proceeding. Section 18.4 of SMCRA is not designed to give a person charged with a violation of the Act two bites at the apple, but rather to assure, when that person takes his one bite, that the fruit is ripe.

The order of the Environmental Hearing Board assessing a civil penalty against Kent Coal is vacated, and this case is remanded to the board with instructions to hold a hearing in which the company is permitted to challenge the fact of the alleged violation.

### ORDER

NOW, November 15, 1988, the order of the Environmental Hearing Board, at EHB Docket No. 86-433-R, dated December 3, 1987, assessing a civil penalty against Kent Coal Mining Company, is vacated. The case is remanded to the board with instructions to hold a hearing in which Kent Coal is permitted to raise the issue of whether it committed the violation of regulations with which it was initially charged.

Jurisdiction relinquished.