561 A.2d 58

**The MERCY HOSPITAL OF JOHNSTOWN, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1989.

Decided June 26, 1989.

Mark Stadler, Mansmann, Cindrich & Titus, Pittsburgh, for petitioner.

John Kane, Chief Counsel, Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before BARRY, McGINLEY and SMITH, JJ.

McGINLEY, Judge.

This is an appeal by the Mercy Hospital of Johnstown (Mercy) from the decision of the Office of Hearings and Appeals (OHA) denying Mercy's appeal and determining that Mercy's allowable cost basis in the building must be limited to Central Transportation, Inc.'s (CT) basis therein at the time of sale.

CT was the owner of a building (Building) in Johnstown, Pennsylvania, which it leased to the Cambria County Nursing Care Center (County Nursing) from March 6, 1975, until the end of 1984. Mercy acquired the Building to operate its own nursing facility on or about November 28, 1984. Mercy operates a seventy-five bed nursing home and is a provider of services to eligible recipients under the Pennsylvania Medical Assistance Program (MA Program) administered by the DPW. County Nursing never claimed or received reimbursement under the MA Program for interest and depreciation expenses associated with CT's building although it did claim reimbursement with respect to lease payments made to CT.[1]

---

1. CT has never owned or operated a health care facility at the building nor been a provider of services under the MA Program or the Federal Medicare Program. CT has never been a "related party" to Mercy as

Pursuant to Mercy's purchase Cambria County ceased operations on December 31, 1984, and Mercy commenced operating the facility.[2]

By notice dated July 18, 1986, DPW advised Mercy of its new interim per diem reimbursement rates established for the nursing home. The rates contained no allowance for interest and depreciation expenses associated with the Building. DPW took the position that Mercy's interim interest and depreciation reimbursement could not be determined until documentation was provided concerning CT's basis in the Building on the date Mercy purchased it. The Department's authority for this position is 55 Pa.Code Section 1181.65(h).[3] Mercy appealed and alleges that DPW erroneously determined the cost basis of CT in the Building

defined by DPW's regulations. *Stipulation and Agreement,* Nos. 6 and 7, Reproduced Record (RR) at 3.

**2.** Mercy agreed to assume the outstanding mortgage of $2,076,263.00 and CT agreed to pay Mercy $7,000.00 per month for a period of 120 months ending on January 1, 1999. (Agreement of Sale between Central Transportation, Incorporated and The Mercy Hospital of Johnstown, R.R. at 27a). The total present value of Mercy's purchase obligation for the building as reduced by the present value of rental payments to be received under certain existing leases at the building is $1,930,557.00.

**3.** Section 1181.65(h) provides:

For all nursing facilities, the Department's reimbursement for depreciation, interest and other costs related to the negotiation or settlement of the sale or purchase of a capital asset that undergoes a transfer of ownership either on or after July 18, 1984, will be determined under Paragraphs 1 and 2. Paragraph 1 does not apply to an asset that undergoes a transfer of ownership either on or after July 18, 1984, under an enforceable agreement that was entered into prior to July 18, 1984.
1. The cost basis that will be used to establish the allowable depreciation and interest for an asset that undergoes a transfer of ownership on or after July 18, 1984, will be the lesser of the remaining allowable cost basis of the asset to the owner of record on or after July 18, 1984, or in the case of an asset not in existence on that date, the first owner of record of the asset after that date, or the allowable cost basis of the asset to the new owner.
2. The Department will not recognize as allowable, a cost including legal fees, travel costs, and costs of feasibility studies, attributable to the negotiation or settlement of the sale or purchase of a capital asset—by acquisition or merger—for which a payment has previously been made under Title XVIII of the Social Security Act (42 USCA Sections 1395–1395xx).

as the limit of Mercy's allowable depreciation. Mercy argues that: 1) DPW's interpretation of 55 Pa.Code Sections 1181.65(h), 1181.259(m) and 1181.260 is erroneous and inconsistent; and 2) DPW's interpretation of the regulations is inconsistent with the legislative and regulatory history underlying the same.

Section 2314 of the Deficit Reduction Act,[4] amended a number of sections of the Social Security Act,[5] and required DPW to adopt a method of reimbursement that satisfied the U.S. Department of Health and Human Services' reasonable concern that DPW would not pay more as a result of a sale than would be paid under the method used by the MA Program. The responsive regulations adopted by DPW and their application have resulted in the present controversy.

Our scope of review of the Department's adjudication is limited to a determination of whether an error of law was committed, whether constitutional rights were violated, and whether or not findings of fact are supported by substantial evidence of record. *Westmoreland Manor v. Department of Public Welfare*, 91 Pa.Commonwealth Ct. 155, 496 A.2d 1282 (1985).

■■■■ Pivotal to our determination is a proper interpretation of 55 Pa.Code § 1181.259(m)(5).[6] The Director for

4. Deficit Reduction Act of 1984, Pub.L. 98–369, § 2314, 98 Stat. 1079.
5. The amendment pertinent to this case is to 42 U.S.C. Section 1395x(v)(1) which relevantly provides:
   In establishing an appropriate allowance for depreciation and for interest on capital indebtedness and (if applicable) a return on equity capital with respect to an asset of a hospital or skilled nursing facility which has undergone a change of ownership, such regulations shall provide ... that the valuation of the asset after such changes of ownership shall be the lesser of the allowable acquisition cost of such asset to the owner of record as of the date of the enactment of this subparagraph (or, in the case of an asset not in existence as of such date, the first owner of record of the asset after such date), or the acquisition cost of such asset to the new owner.
   42 U.S.C. Section 1395x(v)(1)(O)(i).
6. Section 1181.259(m)(5) provides:
   The cost basis for depreciation on an asset the ownership of which changes on or after July 18, 1984, shall be the lessor of the remain-

OHA interpreted Section 1181.259(m)(5) as limiting Mercy's depreciable cost basis to the prior owner's cost basis regardless of whether or not the prior owner was reimbursed through the MA Program. An agency's interpretation of its own regulations must be given judicial deference unless it is clearly erroneous or inconsistent with the policy and objectives of the authorizing statutes. *Twining Village v. Department of Public Welfare*, 105 Pa.Commonwealth Ct. 227, 523 A.2d 1199 (1987). Based upon DPW's interpretation of the relevant regulations, DPW contends that limitation on reimbursement is proper and correct. DPW further asserts that CT benefitted from the rental payments paid by Cambria County and that because DPW funded the rental payments CT should be treated as if it was a participant in the reimbursement program. DPW also points out that Congress did not place any restriction on the methods to be employed. DPW interprets this lack of direction as authority to preclude costs which would not be precluded under the MA Program so long as the method chosen to implement Section 2314 prevents reimbursement for the same asset more than once. We disagree.

Title 55 Pa.Code § 1181.259(a) provides that: "Depreciation on capital assets *used to provide compensable services to medical assistance recipients,* including assets for normal, standby, or emergency use is an allowable cost (emphasis added.)" Section 1181.65(h) directs that the cost basis of an asset to the asset's new owner not exceed "the remaining allowable cost basis of the asset" to the owner of record on or after July 18, 1984 (herein, CT). "Allowable costs" are defined as "costs which are necessary and reasonable to the proper care of Medical Assistance patients and which are identified in this subchapter." 55 Pa.Code § 1181.202. Inclusion of the term "allowable" cost basis makes sense in Section 1181.65(h) only if the prior owner was a participant in the MA Program and entitled to claim capital reimburse-

ing allowable cost basis of the asset to the owner of record on or after July 18, 1984, or, in the case of an asset not in existence as of that date, the first owner of record of the asset after the date, or the allowable cost basis to the new owner.

ment with respect to the asset. CT was not a participant and there is no danger of a double reimbursement of depreciation if Mercy is allowed its proper cost basis which is the purchase price of the asset.

The order of OHA is reversed and this matter remanded for further proceedings consistent with the foregoing opinion.

## ORDER

NOW, June 26, 1989, the order of the Department of Welfare, dated June 1, 1988, dismissing the appeal of Mercy Hospital, is reversed and remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.