586 A.2d 994

**BUCKTAIL MEDICAL CENTER, Divine Providence Hospital, Muncy Valley Hospital and Wayne County Memorial Hospital, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1990.

Decided Jan. 31, 1991.

458

Jack M. Mumford, with him, Paula G. Sanders, Duane, Morris & Heckscher, Harrisburg, for petitioners.

Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before DOYLE and SMITH (P.), JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Bucktail Medical Center, Divine Providence Hospital, Muncy Valley Hospital, and Wayne County Memorial Hospital (Providers) applied for separate reimbursement for de-

preciation and interest costs attributable to the general service centers [1] associated with the care and treatment of Medical Assistance (MA) patients. Several hearings were held before the Office of Hearings and Appeals, after which a hearing examiner recommended granting the Providers' application. The Department of Public Welfare (Department) appealed to the Secretary of the Department of Public Welfare (Secretary). The Secretary refused to follow the hearing examiner's recommendation and denied Providers' application. The Providers filed a petition for review of the Secretary's determination, which is presently before us.

The Providers are Pennsylvania hospitals operating hospital-based skilled nursing facilities (HBNF). The threshold determination that we are to consider in this consolidated proceeding is the Secretary's denial of the Providers' claim for separate reimbursement for depreciation costs allocated to the general service centers associated with the care and treatment of MA patients in the HBNF on the basis that depreciation costs should be treated as net operating costs subject to ceiling limitations instead of depreciation and interest costs payable as allowable costs not subject to such limitations.

■ Our scope of review is limited to a determination of whether the Secretary's adjudication is supported by substantial evidence, is in accordance with the law, or whether any constitutional rights were violated. *Harston Hall Nursing & Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Commonwealth Ct. 475, 513 A.2d 1097 (1986).

■ We initially note that our Supreme Court has outlined two principles with regard to the review of an agency's interpretation of its own regulations. First, the interpretation must be given judicial deference unless it is clearly erroneous or inconsistent with the regulation interpreted.

1. The general service centers include such areas as laundry, dietary, housekeeping and maintenance within each of the respective hospitals.

Second, the interpretation must be consistent with the underlying policies or objectives of the statutes authorizing the particular regulation. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980); *see also Mercy Hospital of Johnstown v. Department of Public Welfare,* 127 Pa.Commonwealth Ct. 127, 561 A.2d 58 (1989). With these principles in mind, we turn to consideration of the determination before us.

■ The Providers contend that the depreciation and interest costs should not be included in the net operating costs of the HBNF but rather should be reimbursed separately and not be subject to the ceiling.

The Department argues to the contrary and asserts that the regulations require that general service center costs must be treated as "operating costs" and hence, are subject to the applicable ceilings governing net operating costs as found by the Secretary.

Pennsylvania's MA reimbursement and cost reporting requirements for nursing facility care are set forth at 55 Pa.Code § 1181.65. A review of the numerous sections arguably applicable to the instant case reveals that *Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities* (Manual), Section IV–D–13,[2] expressly deals with costs of related organizations.[3] This Section, entitled *Costs of related organizations* indicates:

**2.** The Secretary's decision cites the regulation as Manual Section IV(B)(13). As Department regulations have never had any such numbered regulation, the reference, by its context, must be Manual Section IV(D)(13), which is the only subsection of the Manual which has a clause (13) and which is the subsection which deals with services from related organizations, the subject for which it is cited. *See:* 8 Pa.Bulletin 2833 *et seq.* (1978), the published version of the Manual in effect for the periods at issue in this matter.

**3.** 55 Pa.Code § 1181.202 defines "related party" as:

An individual or organization that is associated or affiliated with, or has control of or is controlled by, the provider. "Control," as used in this definition, means the power to influence or direct the actions or policies of another.

Ownership costs of renting facilities from organizations related to the facility by common ownership of more than 10% equity, contract, control, interlocking directorates or officers will be recognized, at the cost to the related organization. Actual depreciation, interest, taxes and related property costs will be allowable in lieu of the rent. . . .

A related organization which also provides services to the general public can furnish services and supplies to a facility under the prudent buyer concept, provided the costs of such services and supplies are consistent with costs of such items furnished by independent third party providers in the same geographic area.

55 Pa.Code § 1181.263.

The Providers do not dispute that their respective hospitals are related to the HBNF. Indeed, the record establishes that the HBNFs are owned by the hospitals.

With regard to separate reimbursement, the Secretary did not find any regulatory support for the proposition that the association between a hospital and an HBNF "also entitles a hospital based facility to exceptional reimbursement of indirect depreciation expense." Rather, the Secretary, in reliance upon Manual Section IV–D–13 (relating to costs of related organizations) recognized the costs of providing services, but required that such costs be considered costs of those services, or "operating costs."

The Secretary determined that:

Neither the Manual, nor the MA–11 cost report, otherwise provide that the costs in dispute here are to be considered as other than operating costs. Since there is no specific authorization in the Manual for the exceptional consideration sought by these facilities, I find the Department's treatment of these costs as "operating costs" to be appropriate.

Thus, the Secretary ultimately concluded that the costs in dispute are to be considered as operating costs and as such,

are subject to the applicable ceilings governing net operating costs.[4]

We find the Secretary's determinations that: 1) Services provided by a related organization must be treated the same for all providers and that 2) Manual Section IV–D–13 determines the character of the costs of related organizations chargeable to the HBNF, are consistent with existing regulations. Such a determination is within the authority of the Secretary of the Department and is buttressed by the Supreme Court's deference to the Department's authority in *Fair Winds Manor v. Department of Public Welfare,* 517 Pa. 106, 535 A.2d 42 (1987). In *Fair Winds,* the Supreme Court recognized the power of the Department in establishing interpretative guidelines with respect to the proper allocation and characterization of costs in the payment determination process.

Further, it is well settled that " '[t]he meaning to be given to terms of art in an agency regulation is particularly within the competence of that agency.' " *Commonwealth v. Beck Electric Construction, Inc.,* 485 Pa. 604, 614, 403 A.2d 553, 558 (1979) quoting *State Dental Council and Examining Board v. Pollock,* 457 Pa. 264, 276, 318 A.2d 910, 917 (1974).

In light of our conclusion that the determination of the Secretary is not plainly inconsistent with the language of the regulation or the underlying statute and is within the recognized power of the Secretary, the decision is affirmed.

## ORDER

AND NOW, this 31st day of January, 1991, the order of the Secretary of the Department of Public Welfare is affirmed.

---

**4.** Net operating costs are defined in 55 Pa.Code § 1181.202 as:
The total allowable cost less depreciation and interest on capital indebtedness.