## PENNSYLVANIA COAL MINING ASSOC., et al., Plaintiffs,

v.

## James G. WATT, and Commonwealth of Pennsylvania Department of Environmental Resources, Defendants.

### Civ. A. No. 82–1129.

United States District Court, M.D. Pennsylvania.

April 20, 1983.

III.

4. Mines and Minerals ⚿92.6

Stephen C. Braverman, Dilworth, Paxson, Kalish & Kauffman, Harrisburg, Pa., for plaintiffs.

Barbara L. Kosik, Asst. U.S. Atty., Harrisburg, Pa., Alfred T. Ghiorzi, U.S. Dept. of Justice, Land and Natural Resources, Washington, D.C., Barbara H. Brandon, Harrisburg, Pa., for defendant intervenor.

## MEMORANDUM

CALDWELL, District Judge.

Each of the parties to this proceeding has filed a motion for summary judgment. We are required to determine whether certain state regulations on the subject of surface mining and reclamation operations are "in accordance with" the federal Surface Mining Control and Reclamation Act, 91 Stat. 445, Public Law 95–87, 30 U.S.C. 1201–1328 (hereinafter the federal act), and "consistent with" federal regulations adopted pursuant to the Act.

The federal act was passed in 1977, and established a nationwide program for dealing with the various problems arising from surface mining in the United States. The Act provides that because of differing problems and conditions from state to state the "primary governmental responsibility for developing, authorizing, issuing and enforcing regulations for surface mining and reclamation operations ... should rest with the states...." 30 U.S.C. § 1201(f). However, before states are permitted to administer their own exclusive regulatory programs, the federal act requires each state to establish to the satisfaction of the Office of Surface Mining (OSM)[1] that it has statutes that are "in accordance with" the requirements of the federal act and that state regulations are "consistent with" the regulations issued by the Secretary of the Interior pursuant to the federal act [30 U.S.C. 1253(a)(1) and (7)].

In order to meet the federal standards[2] certain Pennsylvania laws were amended in 1980, and on January 25, 1982, the Pennsylvania Department of Environmental Resources applied to the Office of Surface Mining for exclusive jurisdiction, or primacy, in the regulation and control of surface coal mining in Pennsylvania. The regulations submitted with Pennsylvania's application to OSM had been adopted by the Pennsylvania Environmental Quality Board (EQB) on November 19, 1980, to be effective when primacy was granted by the OSM. During the pendency of Pennsylvania's application the EQB, on April 20, 1982, adopted a substantial number of revisions to the aforesaid regulations and the application to OSM was amended to include them. On July 30, 1982, the OSM gave conditional approval to the application, which permitted Pennsylvania to assume authority over surface mining of coal, and gave immediate effect to the regulations written by EQB. Plaintiffs in this lawsuit allege that three of the state regulations approved by the Secretary of the Interior should not have been approved and that the Secretary disapproved a proposed state regulation that should have been approved.

Before addressing individually the complaints voiced by plaintiffs we should comment on our jurisdiction and the scope of our review, as dictated by the federal act.

---

1. The Office of Surface Mining was created as part of the Department of the Interior.

2. The OSM promulgated regulations, known as the Permanent Regulatory Program, in 1979.

Section 526(a)(1) provides that, "Any action of the Secretary to approve or disapprove a State program ... shall be subject to judicial review by the United States District Court for the District which includes the Capital of the State ...." "Any action subject to judicial review ... shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law...." [30 U.S.C. 1276(a)(1)]. This standard for judicial review, obviously, places the burden of proof on one attacking the action of the Secretary in approving a state program or requiring amendment thereto.

As already noted, for a state to administer its own surface mining regulatory program it must demonstrate in its application to OSM that the state statutes are "in accordance with" the requirements of the federal law and that state regulations are "consistent with" the regulations issued by the Secretary of the Interior. The OSM regulations give these terms similar meanings:

"Consistent with" and "in accordance with" mean:

(a) With regard to the Act, the State laws and regulations are no less stringent than, meet the minimum requirements of and include all applicable provisions of the Act, and

(b) With regard to the regulations, the State laws and regulations are no less effective than the Secretary's regulations in meeting the requirements of the Act.

30 C.F.R. § 730.5, as amended by 46 Fed. Reg. 53376 (Oct. 28, 1981).

*The Complaints of the Plaintiffs*

We will now address the four separate complaints voiced by plaintiffs.[3]

The first matter complained of concerns the matter of judicial review of decisions which designate areas of the state as unsui-

table for surface mining.[4] Plaintiffs assert that the provisions for judicial review under the Pennsylvania program are not 'consistent with' or 'in accordance with' the federal law and regulations, and that the Secretary therefore acted arbitrarily, capriciously or unlawfully in approving the Pennsylvania scheme for judicial review of such decisions.

The provisions of the federal Permanent Regulatory Program (PRP) establish standards for the states in designating areas that are determined to be unsuitable for mining operations, and are published in 30 CFR 764. The federal requirement for state judicial review of 'unsuitable' designations is set forth in 764.19(c) and provides:

The decision of the State regulatory authority with respect to a petition ... shall be subject to judicial review by a court of competent jurisdiction in accordance with State law under section 526(e) of the Act and 30 CFR 787.12.

Plaintiffs assert that notwithstanding this language, the state regulations fail to provide for any judicial review of 'designation' decisions, which in Pennsylvania are made by the state Environmental Quality Board.

The Environmental Quality Board is a quasi-legislative board. By statute it is the rule and regulation making body for the Department of Environmental Resources (71 P.S.A. 510–20). Under the state scheme no judicial review of this board's actions is provided for. The Secretary of the Interior determined that the federal requirement for judicial review was adequately met, however, because a party aggrieved by land being classified as 'unsuitable' can apply to the Environmental *Hearing* Board (EHB) for permission to mine land previously designated as unsuitable for mining. Any adverse decision by the EHB is then appealable, under 42 P.C.S. 763, to the Commonwealth Court of Pennsylvania, where the designation of unsuitability is subject to review.

---

3. Additional complaints have not been briefed or pursued and are deemed withdrawn.

4. We will not discuss the various means by which this process is initiated, or the various

reasons for which an area may be designated as unsuitable. This detail is covered in the briefs filed by the litigants.

The plaintiffs acknowledge that this procedure can be followed but contend they should have the right to earlier judicial review, i.e. at the time a determination of unsuitability is made by the Environmental Quality Board. They assert that the process involved in later applying for a permit to mine is expensive, and not a practical way to test the determination of unsuitability. This, however, is not the measure by which we are required to judge plaintiffs' case.

■ The federal act requires that states provide, "a process for the designation of areas unsuitable for surface mining...." [30 U.S.C. 1253(a)(5) ] and the act is comprehensive concerning the procedure to be used, which includes liberal provisions for participation of the public or interested persons [30 U.S.C 1272]. It is significant that the federal act does not specify any particular point at which judicial review of such designations must be provided. Thus, we think the Secretary acted within his authority in concluding that the judicial review afforded under the Pennsylvania plan was 'in accordance' with the general federal requirement that 'unsuitable' designations be judicially reviewable. The PRP [30 C.F.R. 764.19(c) ] requires only that the, "decision of the State regulatory authority ... shall be subject to judicial review ... *in accordance with State law* ...." (emphasis supplied).

We do not decide whether the available judicial recourse in Pennsylvania is the ideal means of review, and hold only that this review is 'no less stringent' than the federal act and 'no less effective' than the PRP. In a similar setting the Commonwealth Court of Pennsylvania has determined that regulations enacted by the Environmental Quality Board concerning water quality standards are reviewable only in the context of an appeal from a specific DER action involving an application of such regulations. See *United States Steel Co. v. DER,* 65 Pa.Comm.Ct. 103, 442 A.2d 7 (1982). It is at least consistent with judicial principles that EQB regulations should not be reviewed abstractly, or when there is no

outstanding proposal to mine land that has been determined to be unsuitable in a general ruling adopted for environmental reasons. But regardless of the wisdom involved in this procedure we find no conflict with federal law and regulation and we believe the defendants are entitled to judgment on this objection.

The second area in which it is alleged that the Pennsylvania program does not conform to federal standards concerns the release of liability on performance bonds posted by coal operators.

The requirements of the federal act and regulations are quite specific, and appear to be aimed at protecting the economic interests of operators as well as the environmental concerns of the public. Under the federal law when an application for bond release is filed and properly advertised, etc., the regulatory authority is required to conclude an investigation within thirty days and, if no public hearing is held, a decision on the bond release application must be rendered to the applicant within thirty days thereafter. [30 U.S.C. 1269(b) ]. Thus, when there is no public hearing an applicant must be given a decision within sixty (60) days of completing and filing an application for release.

When objections to a bond release are filed and a hearing is requested, the federal provisions require the regulatory authority to hold a hearing within thirty days of the request for such hearing. [30 U.S.C. 1269(f) ]. A decision must then be rendered within thirty (30) days of the conclusion of the hearing. [30 U.S.C. 1269(b) ]. This same plan is provided for in the government's permanent regulatory plan. [30 CFR 807.11(f) ].

The Pennsylvania program is similar to the federal plan where no hearing is held, and a decision is required within sixty days of a properly filed and advertised application for release. [52 P.S.A. 1396.-4(a)(2)(L)(b) ].

■ However, where a hearing is held (sometimes referred to as an informal conference) Pennsylvania does not require a

decision to be announced until sixty (60) days after said hearing. Furthermore, where a hearing is requested the state plan is completely silent on when or how soon the required hearing must be held. [52 P.S.A. 1396.4(a)(2)(L)(b)]. Under these circumstances an applicant for bond release can do nothing except hope that the hearing is scheduled promptly. If it is not he has no recourse. While these instances afford state officials certain leeway which might be desirable, they are certainly not in accordance with the federal act nor consistent with the regulations[5]. In our view we must honor the protection accorded the coal operators by the federal act, as well as enforcing the environmental rights given the public. This, obviously, is not a situation where the state has adopted a regulation that is "more stringent" or "as effective" as the federal standard. In not providing the assurance to operators who have posted bonds, that their interests will be protected in accordance with the federal timetable for resolution of requests for release, the state has failed to act in accordance with, or consistent with, the federal act and regulations.

We will remand the matter to the Secretary of the Interior with directions to rectify the situation herein discussed.

The third point raised by the plaintiffs deals with the admitted fact that the state program dealing with 'catastrophic storm exemption' from effluent limitations imposes a more restrictive exemption, or more stringent limitation, than the federal requirements under the Surface Mining Act and the Clean Water Act.[6] By way of explanation it is significant to note that both the Office of Surface Mining, and the U.S. Environmental Protection Agency have established effluent limits which govern the discharge of pollutants into the navigable waters of the United States, and both parties provide a 'storm exemption', which excuses certain excessive discharges of effluent that occur because of unusually high amounts of precipitation or snow melt.

When the Surface Mine Act was passed it was provided that it could not supersede the provisions of the Clean Water Act (formerly the Federal Water Pollution Control Act) or other laws relating to the preservation of water quality. As a result the Secretary of the Interior has been prohibited from enforcing regulations that are stricter than, or inconsistent with, those promulgated earlier by the EPA under the Clean Water Act. *In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1367 (D.C.Cir.1980).

It is the plaintiffs' argument that the inconsistency between the Pennsylvania requirements and the federal regulations is not justified, is improper, and will result in continual noncompliance by Pennsylvania coal operators. It is alleged that the Secretary's refusal to condition continued approval of the Pennsylvania program upon the state's adopting an exemption consistent with the federal programs of OSM and EPA is arbitrary, capricious and inconsistent with law. The argument is made that under the federal act the Secretary was not permitted to exceed the EPA standards for the catastrophic exemption. By permitting Pennsylvania to exceed the limitation the Secretary is, in effect, modifying the EPA regulation and thereby violating the restriction imposed upon him in the federal law [30 U.S.C. 1292(a)(3)]. In essence plaintiffs are saying that the Secretary may not do indirectly, what he cannot do directly, i.e., exceed EPA criteria to qualify for the catastrophic storm exemption by allowing a state to employ a more restrictive standard.

Although appealing on the surface, this argument overlooks provisions in both the Clean Water Act and the Surface Mining Act that expressly allow states to set environmental and effluent standards that are more stringent than the federal criteria. Section 510 of the Clean Water Act, 33 U.S.C. 1370, grants this authority to the states and courts have upheld it. *See U.S. Steel v. Train*, 556 F.2d 822, 838–39 (7th Cir.1977) and *Homestake Mining Co. v.*

---

**5.** The Pennsylvania regulations are the same as the state law. See 25 Pa.Code 86.171.

**6.** This Act is found at 33 U.S.C. 1251–1376.

*EPA,* 477 F.Supp. 1279, 1282, 1283–84 (S.D. 1979). Thus, the Secretary's approval of the more stringent state regulation is not inconsistent with the federal act, and indeed is in keeping with the general intent of Congress, as expressed in Section 505 of the act [30 U.S.C. 1255(a) and (b)], to permit states to develop laws and regulations providing for more stringent or different state controls.

Plaintiffs' argument on this point is addressed to concerns which are technical or administrative in nature, but not to issues that are before the writer at this time. Plaintiffs' brief states:

> Pennsylvania, without any technical justification or support in the administrative record, implemented a storm exemption which according to OSM's above-quoted statement[7] will result in continual non-compliance by Pennsylvania's coal operators.

Plaintiffs also argue that the catastrophic storm exemption in 25 Pa.Code 87.103 is neither a "standard or limitation respecting discharges of pollutants" or a "requirement respecting control or abatement of pollution," as those terms are used in Section 510 of the Clean Water Act [33 U.S.C. 1370], which permits states to exceed federal standards. Plaintiffs do not satisfactorily explain why these phrases do not include discharges resulting from high precipitation or storms, and we note that the words "effluent limitations" refer to the discharge of pollutants at the source. *Wisconsin Electric Power Co. v. State National Resources Board, et al.,* 90 Wis.2d 656, 280 N.W.2d 218 (1979). This would seem to include any discharges whereby pollutants are introduced into the water.

In *U.S. Steel v. Train,* supra, the court recognized that impossibility of compliance is not a basis for striking down state imposed restrictions which exceed the Clean Water Act standards, and by extension the mining standards adopted by the Secretary:

It is clear from ... the Act, and the legislative history, that the states are free to force technology. Although the Indiana Board considered technology in setting some of these limitations, it was not required to do so .... If the states wish to achieve better water quality, they may, even at the cost of economic and social dislocations caused by plant closings.

Based upon the reasoning above and the discussion in the defendants' briefs, we decide the Secretary acted properly in approving the state restriction concerning the catastrophic storm exemption.

The final objection posed by plaintiffs concerns the Secretary's rejection, on July 30, 1982, of the Pennsylvania plan insofar as it relates to limiting the circumstances where the time to abate a violation may exceed 90 days. 25 Pa.Code 86.211 sets forth the conditions under which the state proposed to permit a violator to exceed ninety (90) days in correcting a violation. In 30 CFR 938.11(j) the Secretary concluded that the Pennsylvania provision did not harmonize with the federal regulation, as found in 30 CFR 843.12(c) and (f), and conditioned approval of the Pennsylvania program upon the inclusion of language in its regulation that will bring 25 Pa.Code 86.211 into compliance with the federal standard. The Commonwealth takes no position on this point and appears to be content to comply with the Secretary's directive.

The Secretary raises the standing of the plaintiffs to question his decision and argues that the Commonwealth is the only proper party to contest the *disapproval* of a proposed state regulation. It is pointed out that the Secretary imposed his conditions upon the state, not upon plaintiffs, and they are not required to take any action on the Secretary's condition. The state may or may not resubmit an acceptable provision.[8] We agree that as a general legal proposition plaintiffs would normally lack standing but the Secretary has failed to address the

**7.** Setting forth the technical reason behind the modification of OSM's position on the criteria for exemption.

**8.** We are unaware of the status of this remand.

basis on which plaintiffs make their claim of standing. The federal act in 30 U.S.C. 1276(a)(1) provides that

> Any such petition [for judicial review] may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

The plaintiffs appear to have participated in the administrative proceeding and claim they are aggrieved by the Secretary's refusal to approve the state's plan concerning the extension of time to abate violations. Although it is true they are not directly aggrieved in the sense of a current violation, it is our view that the statutory language referred to above cannot be interpreted so as to require actual or present injury. Insofar as the adoption or approval of state surface mining programs is concerned, Congress has afforded a means for interested persons to participate in, and seek judicial review of, proposed state programs. Persons in the status of plaintiffs can well be adversely affected in their future business prospects by a broad program concerning the mining industry, and at least so far as standing to question the Secretary's decisions is concerned, we believe this measure of being aggrieved is what was intended by Congress in providing for review. If actual injury were required to question the Secretary's action the statutory provision would be meaningless.

We come then to determining whether there was abuse of discretion in rejecting the state plan as submitted in 25 Pa.Code 86.211. The proposal required that violations must be corrected within a reasonable time, not to exceed 90 days, provided, however,

> that additional time to achieve compliance may be granted where additional time is necessary to achieve the standards set forth in the acts and regulations . . . . Such additional time may not be granted for reason of financial hardship or impossibility, but only when additional time is essential for the achievement of the standards of environmental protection set forth in the acts and regulations promulgated thereunder. . . .

The Secretary concluded, in 30 C.F.R. 938.11(j) that, ". . . this provision is not consistent with the Federal requirements in that it does not adequately limit the circumstances when additional time beyond the 90 day abatement period should be allowed."

The applicable federal requirements are found in 30 C.F.R. 843.12(c) and (f), which consist of five circumstances when an extension will be permitted. Briefly summarized they are

1) Where a permit application or approval of design plans is pending and such will not be issued timely for reasons not within the control of the permittee.

2) Where a valid judicial order precludes abatement with 90 days, etc.

3) Where a labor strike precludes abatement, etc.

4) Where climatic conditions preclude abatement, etc.

5) Where abatement within 90 days requires action that would violate the federal law or regulations under the Mine Safety and Health Act.

We cannot agree with plaintiffs that the Secretary acted arbitrarily, capriciously or inconsistent with law in concluding that 25 Pa.Code 86.211 is not as stringent or effective as its federal counterpart in 30 C.F.R. 843.12. At most we see a difference of opinion as to the scope and meaning of Pennsylvania's proposed regulation, but we believe the Secretary had discretion under the federal act to conclude that the state's provision was too general.

Except for financial hardships or impossibility the proposed state language permits an extension whenever additional time is necessary to "achieve the standards of environmental protection, etc." While the language is laudatory in its purpose, we view this as a rather vague test which imposes subjective rather than objective standards. The federal regulation is quite specific and it can be seen that there is little if any room for subjective determination. Five circum-

749

stances are outlined in which extensions may be considered and we have no difficulty in concluding that Pennsylvania's broad regulation exceeded the scope of the federal provision. The Secretary properly rejected 25 Pa.Code 86.211.

An appropriate order will be entered remanding 30 C.F.R. 938.10 and 938.11 to the Secretary to condition the approval of the Pennsylvania bond release program upon compliance with federal requirements. In all other respects summary judgment will be entered for the defendants.