

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-1995

# PA Coal Assoc v Babbitt

Precedential or Non-Precedential:

Docket 94-7538

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"PA Coal Assoc v Babbitt" (1995). *1995 Decisions.* Paper 224.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/224

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 94-7538


PENNSYLVANIA COAL ASSOCIATION,
an unincorporated association

v.

BRUCE BABBITT, Secretary of the Interior
of the United States Department of Interior;
ROBERT URAM, Director, Office of Surface
Mining Reclamation and Enforcement,
United States Department of Interior,
Appellants

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES (DER),
Intervenor in D.C.


No. 94-7558


PENNSYLVANIA COAL ASSOCIATION,
an unincorporated association

v.

BRUCE BABBITT, Secretary of the Interior
of the United States Department of Interior;
ROBERT URAM, Director, Office of Surface
Mining Reclamation and Enforcement,
United States Department of Interior


PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL RESOURCES (DER),
Intervenor in D.C.

Commonwealth of Pennsylvania,
Department of Environmental Resources,

1

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 93-cv-00780)


Argued May 5, 1995

Before:  SLOVITER, Chief Judge, ALITO, Circuit Judge,
and SCHWARZER, District Judge*

(Opinion Filed   August 16, 1995)

Robert R. Long, Jr.
Office of United States Attorney
Federal Building
Harrisburg, PA  17108

Steven C. Barcley
United States Department of Interior
Office of the Solicitor
Pittsburgh, PA  15220

Ellen J. Durkee
Tamara N. Rountree (Argued)
United States Department of Justice
Environmental & Natural Resources
Washington, D.C.  20026

        Attorney for Appellants Secretary of the Interior of
        the United States and Director of the Office of
        Surface Mining Reclamation and Enforcement

Joseph G. Pizarchik
Dennis Whitaker (Argued)
Office of Attorney General of
Pa. Department of Environmental Resources
Harrisburg, PA 17105

        Attorneys for Appellant Department
        Environmental Resources

_____

\*   Hon. William W Schwarzer, Senior United States District Judge, United States District Court for the Northern District of California, sitting by designation.

Stephen C. Braverman (Argued)
Buchanan Ingersoll
Philadelphia, PA 19103

      Attorney for Appellee Pa. Coal Association


OPINION OF THE COURT


SLOVITER, Chief Judge.


The Secretary of the Interior of the United States
("Secretary"), the Director of the Office of Surface Mining
Reclamation and Enforcement ("Director"), and the Pennsylvania
Department of Environmental Resources ("DER") appeal from the
district court's grant of summary judgment in favor of the
Pennsylvania Coal Association ("PCA") on its challenge to the
Secretary's approval of certain amendments to Pennsylvania's
surface mining regulatory program.  At issue is whether the
Secretary acted arbitrarily and capriciously in approving
amendments that eliminate the "willfully and knowingly" scienter
requirement for imposition of civil penalties on corporate
officers and that change the appeal procedures by requiring
alleged violators to perfect an appeal from a compliance order at
the risk of having their challenge to the fact of violation
deemed waived.

I.

Facts and Procedural History

In 1977, in response to the growing environmental and social costs of coal extraction in the United States, Congress enacted the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201-1328 (1988 & Supp. IV 1993). Among other things, the SMCRA proposed "to establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). By establishing nationwide standards governing surface coal mining operations, Congress hoped that "the unnecessary degradation of land and water resources [would] be avoided as the country makes good use of its abundant coal supply." H. R. Rep. No. 95-218, 95th Cong., 1st Sess. 57 (1977), reprinted in 1977 U.S.C.C.A.N. 593, 595.

The SMCRA established the Office of Surface Mining Reclamation and Enforcement ("OSM") as a subdivision of the Department of the Interior. 30 U.S.C. § 1211(a). The SMCRA empowers the Secretary, acting through the OSM, to administer the programs for controlling surface coal mining operations set forth in the Act. Id. § 1211(c).

The principal regulatory and enforcement provisions of the SMCRA are set forth in Subchapter V of the Act. See 30 U.S.C. §§ 1251-1279; see also Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 269 (1981). A permit is required before any person or company may engage in surface coal mining operations. See 30 U.S.C. § 1256. That permit must

6

require the surface coal mining operation to satisfy certain environmental protection performance standards.  See id. §§ 1265–66.  Permittees who violate any permit condition or who violate any other provision of Subchapter V may be assessed with civil penalties.  Id. § 1268(a).  Permittees who "willfully and knowingly" commit such violations may be punished by a fine and/or imprisonment.  Id. § 1268(e).

Two SMCRA civil penalty provisions are particularly relevant to this case.  One provides that when a violation is committed by a corporate permittee "any director, officer, or agent of such corporation who willfully and knowingly authorized, ordered or carried out such violation, failure or refusal shall be subject to the same civil penalties" that may be imposed upon permittees.  Id. § 1268(f) (emphasis added).  The other deals with the opportunity of parties charged with violations by the Secretary to challenge the fact of the violation.  Under the SMCRA, a party may challenge the Secretary's charge of violation either within thirty days of receiving a notice or order charging a violation,  see id. § 1275(a)(1), or after a penalty has been assessed.  See id. § 1268(c); see also 30 C.F.R. § 845.19.

In addition to the provisions for federal enforcement of the SMCRA, see 30 U.S.C. § 1254, the statute contains a mechanism by which states may "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" on non-Federal lands within the state.  Id. § 1253(a).  To achieve this control, a state must submit to the Secretary a proposed program "which demonstrates that such State has the

7

capability of carrying out the provisions of [the SMCRA] and meeting its purposes . . . ." Id. The proposed state program must contain state laws which provide for the regulation of surface coal mining and reclamation operations "in accordance with the requirements of [the SMCRA]," id. § 1253(a)(1), and rules and regulations "consistent with" regulations issued by the Secretary under the SMCRA. Id. § 1253(a)(7). Section 505(b) of the SMCRA provides, however, that "[a]ny provision of any State law or regulation . . . which provides for more stringent land use and environmental controls and regulations of surface coal mining and reclamation operation than do the provisions of this chapter or any regulation issued pursuant thereto shall not be construed to be inconsistent with this chapter." Id. § 1255(b) (emphasis added). Moreover, with respect to civil and criminal penalty provisions, the SMCRA requires that the state program "incorporate penalties no less stringent than those set forth in this section, and . . . contain the same or similar procedural requirements relating thereto." Id. § 1268(i) (emphasis added).

The Secretary has the authority to promulgate regulations establishing procedures and requirements for the preparation, submission and approval of state programs. Id. §1251(b). The criteria established by the Secretary for the approval or disapproval of state programs provide, in relevant part, that the Secretary shall not approve a proposed state program unless the Secretary finds that:

> (a)The program provides for the State to carry out the provisions and meet the purposes of the Act and this Chapter within

8

the State and that the State's laws and regulations are in accordance with the provisions of the Act and consistent with the requirements of the Chapter.

(b)     The State regulatory authority has the authority under State laws and regulations pertaining to coal exploration and surface coal mining and reclamation operations and the State program includes provisions to--

. . . .

(7)     Provide for civil and criminal sanctions for violations of the State law, regulations and conditions of permits and exploration approvals including civil and criminal penalties in accordance with section 518 [30 U.S.C. § 1268] of the Act and consistent with 30 C.F.R. 845, including the same or similar procedural requirements;

30 C.F.R. § 732.15.

The Secretary has also promulgated regulations governing any changes, referred to as "amendments," to an approved state program. See 30 C.F.R. § 732.17. A state that proposes any amendments to the laws or regulations that make up the approved state program must submit them for approval to the OSM Director. 30 C.F.R. § 732.17(g). The OSM Director must review the proposed amendments with reference to the criteria set forth in 30 C.F.R. § 732.15 for the approval or disapproval of the state program. See 30 C.F.R. § 732.17(h)(10).

On July 31, 1982, the Secretary approved the Pennsylvania regulatory program for surface coal mining and reclamation operations. See 30 C.F.R. Part 938; 47 Fed. Reg. 33,079 (1982). The Pennsylvania program is set forth in the Pennsylvania Surface Mining Conservation and Reclamation Act

9

("PaSMCRA"), 52 Pa. Stat. Ann. §§ 1396.1–1396.31 (Supp. 1994), and its accompanying regulations, 25 Pa. Code §§ 86.1– 86.242. The Pennsylvania program vests the primary authority for enforcement of the program with the Pennsylvania DER. See 52 Pa. Stat. Ann. § 1396.4c.

On December 18, 1991, Pennsylvania submitted proposed program amendments for approval by the Director of the OSM, including the three proposed amendments that have been challenged by PCA in this lawsuit. Two of those amendments ("the civil liability amendments") would alter the standard for the imposition of civil penalties on corporate officers for violations of the PaSMCRA by a permittee corporation. See 25 Pa. Code § 86.195(a) (as amended 1993); 25 Pa. Code 86.1 (as amended 1993). The third amendment ("the civil appeals amendment") would alter the appeal procedure for persons charged with a violation. See 25 Pa. Code § 86.202 (as amended 1993).

Upon receipt of Pennsylvania's proposed amendments, the OSM initiated a public comment period and announced the opportunity for a public hearing. PCA, the principal trade association of Pennsylvania's coal producers, forwarded comments and, at its request, a public hearing was held on June 30, 1992. After receiving assurance from the state that the civil appeals amendment was in conformity with state law, the OSM approved each of the challenged amendments on April 8, 1993. See 58 Fed. Reg. 18,149, 18,152–53, 18,157–58 (1993). Thereafter, the Secretary issued a final order approving the three proposed amendments. See 30 C.F.R. § 938.15(y).

10

PCA filed this action on May 25, 1993 seeking declaratory and injunctive relief to set aside the three amendments. It named as defendants Bruce Babbitt, the Secretary of the Department of the Interior, and W. Hord Tipton, who was then Acting Director of the OSM.[1] The Pennsylvania DER intervened as a party defendant in the action.

After the parties had filed cross-motions for summary judgment, the district court issued an order granting PCA's motion for summary judgment on the issue of the Secretary's approval of the civil liability amendments, concluding that the Secretary's approval was "arbitrary, capricious and inconsistent with SMCRA," and enjoined the Secretary and the Director from enforcing those amendments. See Order & Judgment of March 30, 1994. The court denied PCA's motion for summary judgment on its challenge to the civil appeals amendment. Id.

The parties filed motions to reconsider and to alter or amend the district court's judgment. On July 12, 1994 the district court vacated its prior order denying PCA's motion for summary judgment regarding the civil appeals amendment, and granted PCA's motion, concluding that the Director's approval of that amendment was "arbitrary and capricious" because inconsistent with the Secretary's own regulations. The court then enjoined the Secretary and the OSM from enforcing the civil appeals amendments. See Order & Judgment of July 12, 1994. The court denied the motions of the Secretary, the OSM Director and

---

[1]Tipton was replaced as the OSM Acting Director by Ann Shields, and later by current OSM Director Robert Uram.

11

the Pennsylvania DER to alter and amend its grant of summary judgment on the civil liability amendments.

The Secretary and the OSM Director (the "federal defendants") appeal from the district court's order invalidating the Secretary's approval of the civil liability amendments. The Pennsylvania DER ("the State") filed a separate appeal from that order and the district court's order invalidating the approval of the civil appeals amendment. The two appeals have been consolidated. We have jurisdiction over the district court's grant of summary judgment to PCA pursuant to 28 U.S.C. § 1291.

## II.

### Standard of Review

An appellate court reviews the district court's grant of summary judgment de novo, applying the same standard as the district court. Beazer East, Inc. v. United States Envtl. Protection Agency, Region III, 963 F.2d 603, 606 (3d Cir. 1992). This requires that we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.

Judicial review over the Secretary's actions under the SMCRA uses the deferential standard applied to administrative actions. The Act provides:
> Any action of the Secretary to approve or
> disapprove a State program . . . pursuant to
> this chapter shall be subject to judicial
> review by the United States District Court
> for the District which includes the capital
> of the State whose program is at issue. . . .
> . . . .

12

> Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is <u>arbitrary, capricious, or otherwise inconsistent with law.</u>

30 U.S.C. § 1276(a)(1) (emphasis added).

In determining whether the Secretary's actions are "arbitrary, capricious, or otherwise inconsistent with law," we look to the statute to determine "whether Congress has directly spoken to the precise question at issue." <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984). If the statute is silent or ambiguous, however, courts typically defer to the Secretary's reasonable interpretation. <u>See</u> <u>National Wildlife Fed'n v. Lujan</u>, 928 F.2d 453, 456 (D.C. Cir. 1991); <u>see</u> <u>also</u> <u>Chevron</u>, 467 U.S. at 843 ("the question for the court is whether the agency's answer is based on a permissible construction of the statute"). Such deference is particularly appropriate when a court reviews the Secretary's interpretation of the Secretary's own regulations. <u>See</u> <u>Udall v. Tallman</u>, 380 U.S. 1, 16 (1965).

III.

<u>Discussion</u>

A.

<u>The Civil Liability Amendments</u>

The issue between the parties over the civil liability amendments to the PaSMCRA is based upon the difference between the language in the federal statute governing the imposition of civil penalties on corporate officers and the language now in the

13

Pennsylvania regulations.  As noted above, under the federal statute the Secretary may assess civil penalties against any corporate director, officer or agent who "willfully and knowingly authorized, ordered, or carried out such violation, failure or refusal . . . ."  30 U.S.C. § 1268(f).  The same standard is incorporated in a parallel federal regulation.  See 30 C.F.R. §846.12(a).

In contrast, with the omission of the "willfully and knowingly" language from Pennsylvania's civil liability regulation, the DER may assess civil penalties against a corporate officer who "participates in a violation or whose misconduct or intentional neglect causes or allows a violation."  See 25 Pa. Code § 86.195(a) (as amended 1993).  The related amendment defines "participates" as "[t]o take part in an action or to instruct another person or entity to conduct or not to conduct an activity."  See 25 Pa. Code § 86.1 (as amended 1993).

Neither party elucidates precisely what effect the language change eliminating the "willfully and knowingly" scienter requirement will have on the standard of proof in a particular case.  Arguably it makes the scienter requirement as to corporate officers one of general intent rather than specific intent.  Inasmuch as PCA's challenge in this suit was only to the Secretary's approval of the omission of the "willfully and knowingly" language and the district court did not discuss how that might apply to a corporate officer's conduct, we leave that issue for resolution by a state court or agency in an appropriate case.

14

The district court agreed with PCA that the Secretary's approval of Pennsylvania's civil liability amendments was invalid under the SMCRA. The court held that because the Pennsylvania Code would now permit the assessment of civil penalties against corporate officers who do not act "willfully and knowingly," it authorized imposition of individual liability on "a lesser standard of proof concerning the individual's intent than in the federal law," although "no particular provision of SMCRA or federal regulations authorizes a state to vary the standard of individual liability." Memorandum of Decision, March 30, 1994, at 16-18. The district court also found that the omission of the "willfully and knowingly" language that is in 30 U.S.C. § 1268(f) meant that the Pennsylvania law and regulations do not include "all applicable provisions" of the SMCRA and therefore the amended civil liability regulations were "defective" under 30 C.F.R. § 730.5(a). Id. at 18.

The district court cited various provisions of the federal statute and regulations which require that state law be "consistent with" and "in accordance with" the requirements of the SMCRA and regulations issued thereunder. See, e.g., 30 U.S.C. § 1253(a)(1) (state law must be "in accordance with the requirements of" SMCRA); 30 U.S.C. § 1253(a)(7) (state rules and regulations must be "consistent with regulations issued by the Secretary"); 30 C.F.R. § 732.15(a) (permitting approval of a state program only if, inter alia, the State's laws and regulations are "in accordance with the provisions of the Act" and "consistent with the requirements of the Chapter"); 30 C.F.R.

15

§ 732.15(b)(7) (requiring that the state program "[p]rovide for civil and criminal sanctions for violations of the State law, regulations and conditions of permits and exploration approvals including civil and criminal penalties in accordance with section 518 [30 U.S.C. § 1268] of the Act . . . .").

The court acknowledged that section 505(b) of the SMCRA, 30 U.S.C. § 1255(b), explicitly permits states to enact "more stringent land use and environmental controls and regulations," but it read that provision as "only intended to allow states to impose more stringent substantive standards on coal mining operations," and "not intended to lower the threshold of liability."  Memorandum of Decision, March 30, 1994, at 15. It therefore believed that section 505(b) of the SMCRA was inapplicable.

On appeal, the federal defendants contend that the district court's construction of section 505(b) was plainly incorrect.  They argue that because Pennsylvania's civil liability amendments impose a stricter standard of liability for individual corporate officers, they are necessarily "more stringent land use and environmental controls" authorized by section 505(b).  The federal defendants also argue that the district court's distinction between "substantive state standards on coal mining operations" and the standards for "individual liability" is untenable, and note that section 505(b) applies to "[a]ny provision of any State law or regulation."  30 U.S.C. §1255(b) (emphasis added).  Congress's use of the term "any," they reason, permits states to enact any law or regulation which

16

is more stringent than the federal laws or regulations, not merely "substantive" land use or environmental control provisions. Pennsylvania's more expansive standard for individual corporate officer liability is one such form of more stringent regulation.

The plain language of the statute and our prior precedent convince us that the district court's interpretation of section 505(b) is too narrow. That section reflects Congress's intent to give the states primary jurisdiction over regulation of surface mining, see 30 U.S.C. §§ 1201(f), 1253, as long as the states impose laws and regulations that at least meet the minimum Federal standards. H.R. Conf. Rep. No. 493, 95th Cong., 1st Sess. 102 (1977), reprinted in 1977 U.S.C.C.A.N. 728, 733. Of course, the states may not impose a law or regulation that is "inconsistent" with the SMCRA, as section 505(a) makes clear, see 30 U.S.C. § 1255(a), but section 505(b) clarifies that "more stringent" laws or regulations shall not be construed as "inconsistent." Instead, the entire purpose of section 505(b) is to ensure that the federal standards act as a floor. There would be no reason to allow the states to impose their own regulations if the regulations had to be the same as the federal Act and regulations. That the federal sanction is to serve only as the base rather than the ceiling for the state programs is spelled out in the SMCRA itself.

We see no support in the SMCRA for reading sanctions out of section 505(b). Sanctions for violations are an integral element of "land use and environmental controls and regulations."

17

While not determinative, it is relevant that the SMCRA civil liability provisions, including the provision imposing individual liability on corporate officers, fall within Subchapter V dealing with Control of the Environmental Impacts of Surface Coal Mining, the Subchapter directed to substantive controls. The provision for the Secretary's approval of state programs requires, inter alia, that the state have in place sanctions that "meet the minimum requirements of [the SMCRA]." 30 U.S.C. § 1253(a)(2). Had Congress contemplated that states could not reach farther than the SMCRA in conduct subject to sanction, it hardly would have included such a provision.

This court previously considered the scope of section 505(b) of the SMCRA in Budinsky v. Pennsylvania Dep't of Envtl. Resources, 819 F.2d 418 (3d Cir.), cert. denied, 484 U.S. 926 (1987). At issue in that case was a Pennsylvania amendment requiring a permit for all mining activity, notwithstanding that the SMCRA at the time contained an exemption (since repealed) for surface mining operations that affect two acres or less. Pennsylvania justified its broader permit requirement under section 505(b) as a "more stringent" requirement than that imposed under the federal law. On appeal, Budinsky, a coal mine operator, argued that section 505(b) applied solely to the "procedural, technical and substantive permit application requirements" of 30 U.S.C. §§ 1256-1257, and therefore could not be construed as allowing the Pennsylvania DER to regulate mining operations of less than two acres. Budinsky, 819 F.2d at 421.

18

We rejected the operator's restrictive interpretation of that provision and concluded instead that section 505(b) "manifestly pertains to the entire Act, including the two-acre exemption of [30 U.S.C.] § 1278(2)." Id. at 422 (emphasis added). We stated that nothing in the SMCRA "precludes a state from exceeding the Act's land use and environmental directives with more stringent standards." Id. at 422-23.

The district court in this case attempted to reconcile Budinsky with its conclusion that section 505(b) is inapplicable here by stating that Budinsky involved "land use and environmental controls and regulations." Memorandum of Decision, July 14, 1994, at 13-14. This conclusory attempt to distinguish Budinsky is unpersuasive. In Budinsky, we plainly stated that section 505(b) applies "to the entire Act." Id. at 422. Having held in Budinsky that 30 U.S.C. § 1255(b) (section 505(b)) applies to 30 U.S.C. § 1278, we see no reason not to apply it to 30 U.S.C. § 1268(f), which contains the individual corporate officer liability standard.

The district court and PCA both relied on Pennsylvania Coal Mining Ass'n v. Watt, 562 F. Supp. 741 (M.D. Pa. 1983), an earlier decision by this district judge. Of course, that opinion is not precedential for us. In any event, it is distinguishable. The SMCRA requires that bond hearings be held within thirty days after a request for such hearing and that the decision be announced within thirty days of the hearing. See 30 U.S.C. §1269. In contrast, the Pennsylvania program had no time requirement for hearings and allowed sixty days from the hearing

19

for announcement of decisions. The court held in Watt that the Pennsylvania program was not "in accordance with" or "consistent with" the provision in the SMCRA, and that it was not saved as a "more stringent" control or regulation than the federal law because, in fact, it was not "more stringent."

While we need not decide whether the Watt court correctly analyzed the parameters of "stringency," we fail to see that Watt is applicable here. The state rule at issue in Watt did not impose a "more stringent" land use or environmental control than the applicable federal rule, but merely created the possibility for delays by the regulatory authorities that federal law specifically prohibited. In this case, by contrast, the state liability standard is directed to those who are regulated and is inclusive of the federal standard, as no person who is liable under the federal law will be able to avoid liability under the state standard.

Similarly, In re: Permanent Surface Mining Regulation Litigation, 14 Env't Rep. Cas. (BNA) 1083 (D.D.C. Feb. 26, 1980), aff'd in relevant part & rev'd in part, 14 Env't Rep. Cas. (BNA) 1813 (D.C. Cir. 1980), on which PCA relies, does not support its position. In suggesting that state programs must incorporate the same statutory criteria as those set forth in the federal statute, the Permanent Surface Mining court was referring specifically to the four criteria set forth in 30 U.S.C. §1268(a) to be used in determination of the amount of a penalty to be assessed. See id. at 1089 n.10. The Permanent Surface Mining decision does not suggest that states cannot expand the relevant

20

"statutory criteria" to create a more stringent standard. Rather, it holds that the federal law sets forth the minimum criteria which must be incorporated into the state programs.

We conclude that section 505(b) of the SMCRA applies to Pennsylvania's civil liability amendments, and that under that section the Pennsylvania civil liability amendments, which impose a more stringent standard of individual liability, may not be construed as inconsistent. It follows that the district court erred in holding that the Secretary's approval of those amendments was invalid.

B.

The Civil Appeals Amendment

We turn to the State's challenge to the district court's order holding arbitrary and capricious the OSM's approval of the civil appeals amendment. In 1988 the Pennsylvania Commonwealth Court interpreted the PaSMCRA and regulations to permit a party against whom the DER assessed a civil penalty to contest the fact of the violation when the party challenges the later assessed civil penalty. See Kent Coal Mining Co. v. Commonwealth, 550 A.2d 279, 283 (Pa. Commw. 1988). In so holding, the Commonwealth Court looked to what it viewed as the unambiguous language in section 18.4 of the PaSMCRA, 52 Pa. Stat. Ann. § 1396.18d (previously codified at 52 Pa. Stat. Ann. §1396.22), and the similar language in the comparable regulation in the Pennsylvania Code. Section 18.4 of the PaSMCRA provides: "[t]he person or municipality charged with the penalty shall then have thirty (30) days to pay the proposed penalty in full or, if the person or municipality

21

wishes to contest <u>either the amount of the penalty or the fact of the violation</u>, forward the proposed amount to the secretary for placement in an escrow account . . . " 52 Pa. Stat. Ann. § 1396.18d (emphasis added). Under the regulation: "[t]he person charged with the violation <u>may contest the penalty assessment or the fact of the violation by filing an appeal with the Environmental Hearing Board</u>, including with the appeal an amount equal to the assessed penalty--to be held in escrow as provided in subsection (b)--<u>within 30 days</u> from receipt of the assessment or reassessment." 25 Pa. Code, § 86.202(a) (1988) (emphasis added) (amended 1993).

DER did not include a proposed penalty when it sent a compliance order to Kent Coal notifying it of a PaSMCRA violation, and apparently DER has a practice of issuing a compliance order in advance of assessment of a penalty. When Kent Coal sought to challenge both the violation and the penalty, DER argued that under the doctrine of administrative finality Kent Coal's failure to appeal the compliance order within thirty days precluded it from contesting the fact of violation. The <u>Kent Coal</u> court rejected this argument by reference to the statute and regulation quoted above which expressly refer to an appeal on both issues. In the proposed amendments submitted to the OSM for approval, Pennsylvania modified 25 Pa. Code § 86.202 in two ways: one was a modification of subsection (a) so that it now refers only to an appeal of a "penalty assessment." 25 Pa. Code §86.202(a) (as amended 1993). The other was to add the following language to subsection (d):

22

> A person may challenge either the fact of the violation or the amount of the penalty once an appeal of that issue has been perfected. In either challenge, the appellant will be bound as to actions of the Department which have become final under section 4 of the Environmental Hearing Board Act (35 P.S. §7514). A final action includes a compliance order which has become final, even though the order addresses the same violation for which a civil penalty is assessed.

25 Pa. Code § 86.202(d) (as amended 1993).

As summarized by the Director of the OSM in granting approval to the amendment, this change "would eliminate the chance to appeal the fact of the violation at the time of penalty assessment if the appeal of the compliance order had not been perfected . . . ." 58 Fed. Reg. at 18,153. The details of the procedure are not before us but it appears that, under the amended regulation, a party seeking to challenge the fact of a PaSMCRA violation must perfect an appeal to the Environmental Hearing Board within 30 days of the compliance order. See 25 Pa. Code § 21.52; 35 Pa. Stat. Ann. § 7514(c).

After the Secretary ratified the Director's approval of the civil appeals amendment, PCA asserted a many-pronged challenge to that approval in district court. The district court rejected PCA's contention that the change in the Pennsylvania regulation was "inconsistent" with federal law notwithstanding that the SMCRA gives parties the opportunity to challenge both the fact of violation and the penalty at the same time. See 30 U.S.C. § 1268(c). The court recognized that state programs were required

23

to contain "the same or similar procedural requirements" as those available under the federal law, 30 U.S.C. § 1268(i), but held that Pennsylvania's amended civil appeals regulation did provide "similar," albeit not the "same," procedural rights as those available under federal law. See Memorandum of Decision, March 30, 1994, at 6. Notably, the court reasoned that "the amendment affects only the timing of an appeal and not the substantive matters that can be raised." Id. at 6-7.

In the same opinion, the district court rejected PCA's contention that the amended regulation conflicts with state law. On reconsideration, however, the district court reached a different result, noting that its earlier decision had been based on its view that the provisions as to procedure in section 18.4 had been implicitly repealed because they were inconsistent with a subsequently enacted Pennsylvania statute. Memorandum of Decision, July 12, 1994, at 4-5. The court was now persuaded that section 18.4 had not been repealed by implication. It concluded that the amended civil appeals regulation was in conflict with the still viable section 18.4 as it had been interpreted by Kent Coal. The district court then held that because a statute controls over a regulation, the amended civil appeals amendment was invalid under Pennsylvania law. Id. at 11. Continuing its analysis, the district court interpreted the federal SMCRA regulations as prohibiting the OSM from approving an amendment that was invalid under Pennsylvania state law. The court read 30 C.F.R. § 732.15(b)(7) to require that the OSM determine "that Pennsylvania had authority under state law to

adopt a provision like new section 86.202." Memorandum of Decision, July 12, 1994 at 9. Relying on its own conclusion as to the invalidity of the amended civil appeals regulation under state law, the court held that the OSM's approval of an invalid regulation violated the Secretary's own regulation at 30 C.F.R. §732.15(b)(7) and was "arbitrary and capricious." See Memorandum of Decision, July 12, 1994 at 11. It therefore enjoined the enforcement of the civil appeals amendment.

On appeal, the State argues primarily that the district court's conclusion rests upon a misinterpretation of 30 C.F.R. §732.15(b)(7). In particular, the State contends that the Secretary's (here inclusive of the Director's) obligation under that provision is limited to ensuring that the state regulatory authority has the "authority" to promulgate appropriate regulations under state law, and that the Secretary is not required to ensure that every proposed amendment is consistent with all other provisions in state law. If there is a conflict with state law, the State argues, that issue is best resolved by the Pennsylvania courts.

The question before us is not whether the district court correctly analyzed the intricacy of Pennsylvania administrative law but whether the SMCRA regulations mandate that the Secretary undertake such an intricate analysis before approving a state program or amendment. The plain language of the regulation imposes no duty on the Secretary to ensure that all elements of the state program are consistent with state law. Under 30 C.F.R. § 732.15(a) the Secretary must ensure consistency with the

relevant provisions of <u>federal</u> <u>law</u>, and the findings relevant here were limited to the conclusion that the provisions in the amended civil appeals regulation are similar to the SMCRA regulations dealing with the procedures for civil penalties. <u>See</u> 58 Fed. Reg. at 18,158. Sections 732.15(b)(7) and (8) require only that the Secretary find that the DER "has the authority under State law and regulations" to provide for civil and criminal sanctions for PaSMCRA violations and to enforce them. 30 C.F.R. § 732.15(b)(7)-(8).

PCA correctly notes that during the OSM's review of the civil appeals amendment in this case, the Director questioned Pennsylvania regarding the consistency of the amendment with state law. During the course of its review of the amendment, "OSM expressed concern that this change to section 86.202 would render it inconsistent with section 18.4 of PA-SMCRA [52 Pa. Cons. Stat. Ann. § 1396.18d]." 58 Fed. Reg. at 18,153. Pennsylvania satisfied these concerns by providing a letter from the Pennsylvania Attorney General approving the proposed regulations "in both form <u>and legality</u>." <u>Id.</u> (emphasis added). We are troubled by the Secretary's failure to articulate a binding administrative interpretation to clarify the extent of the Secretary's duty to inquire into state law, but we decline to glean from the OSM's inquiry during the administrative proceedings an affirmative obligation on the Secretary to do more than was done here. We have no need here to consider the separate question whether the Secretary has the authority to

26

reject proposed amendments to state programs due to their inconsistency with state law.

Finally, apparently as an alternative ground to uphold the district court's order, PCA argues that the civil appeals amendment is not consistent with federal provisions which permit an alleged violator to wait to challenge the fact of violation until making a challenge to the penalty that is assessed. See 30 U.S.C. § 1268(c); see also 30 C.F.R. § 845.19. We find no basis for PCA's argument.

Under 30 U.S.C. § 1268(i), state programs are only required to "contain the same or similar procedural requirements" as those set forth in the federal statute. 30 U.S.C. § 1268(i) (emphasis added); see also 30 C.F.R. § 732.15(b)(7) (requiring, among other things, that the state program include "the same or similar procedural requirements" for civil and criminal sanctions as those contained in 30 U.S.C. § 1268 and 30 C.F.R. § 845). The Director acknowledged that the new PaSMCRA civil appeals regulation eliminates an alleged violator's ability to delay its appeal of the fact of a violation, but approved the amendment because it contains procedures which are "similar to the counterpart Federal regulations," see 58 Fed. Reg. at 18,153; see also id. at 18,158, a conclusion also reached by the district court.

Because the state civil appeals amendment follows the federal procedures in assuring notice and an opportunity to be heard and merely restricts the timing of appeals, we agree with the Director's conclusion that the procedural requirements of the

civil appeals amendment are "similar" to the procedural requirements available under the SMCRA, as that term is used in 30 U.S.C. § 1268(i). The Director's interpretation of "similar" as used in 30 U.S.C. 1268(i) is not unreasonable, nor does it violate any clear statutory or regulatory mandate. It is therefore entitled to deference. See Chevron, 467 U.S. at 844. Thus, we conclude that the district court erred in holding that the Secretary's approval of the civil appeals amendment was "arbitrary, capricious, or otherwise inconsistent with law" due to what the court viewed as an inconsistency with state law, and we cannot affirm the district court's order on the alternative grounds advanced by PCA.

## IV.

## Conclusion

For the foregoing reasons, the orders of the district court will be reversed with instructions to vacate the injunctions and enter summary judgment for the defendants and the intervenor.