PSM-167                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3807
_____

JOHN CARTER,
                                                         Appellant

v.

JEFFREY BEARD, Secretary of Corrections, Department of Corrections; WILLIAM
CARNUCHE; LANCE COUTURIER; WILLIAM HARRISON; DR. FRED MAUE;
JOHN MCCULLOUGH; WILLIAM STICKMAN

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 05-cv-1949)
District Judge:  Honorable William W. Caldwell

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 6, 2010

Before: FUENTES, GREENAWAY, JR. and VAN ANTWERPEN , Circuit Judges

(Opinion filed     August 26, 2010 )

_____

OPINION
_____

PER CURIAM

        John Carter appeals pro se from the United States District Court for the Middle

District of Pennsylvania's August 31, 2009 entry of judgment against him.[1]  For the

reasons that follow, we will vacate the District Court's order and remand for further

proceedings consistent with this opinion.

Carter is a Pennsylvania state prisoner.  In 2005, he commenced an action under 42

U.S.C. § 1983 against various employees of the Pennsylvania Department of Corrections

("the defendants").  Carter alleged that his due process rights were violated because he

was transferred into the prison's Special Management Unit ("SMU") without a hearing or

the opportunity to challenge his indefinite placement in the SMU.

Carter was first placed in the SMU at the State Correctional Institution ("SCI")-

Greene in October 2000 after accumulating more than 1,800 days of disciplinary time

while housed in the general population and in the Restricted Housing Unit ("RHU").  In

December 2001, Carter was transferred to SCI-Pittsburgh's RHU in administrative

custody status, where he stayed until October 1, 2003.  At that time, because he had

exhibited disruptive behavior in the RHU, he was transferred back to the SCI-Greene

SMU.  Carter asserts, and the defendants do not argue otherwise, that his October 2003

transfer occurred without written notice or a hearing.  From October 1, 2003 through

March 2, 2007, Carter was moved between numerous prisons but always remained in the

SMU.  Then, in March 2007, he was transferred to the RHU at SCI-Smithfield because

---

[1]     Because Carter does not advance any argument concerning the District
Court's May 19, 2006 order dismissing Secretary Jeffrey Beard as a defendant, we will
not review that order.

2

"he was considered to be an SMU failure."

The defendants moved for summary judgment, asserting that Carter's transfer to and confinement in the SMU did not trigger a protected liberty interest, and thus that his due process rights had not been implicated.[2] The defendants described the SMU program as an "opportunity" for the inmates to teach themselves discipline and pro-social skills so as to co-exist peacefully with people from other backgrounds. The SMU consists of five phases—phase five being the most restrictive and reserved for those in disciplinary custody. As the inmate progresses through the phases, he obtains access to privileges and services. According to the Inmate Handbook, an inmate in the SMU is reviewed by his Unit Team every thirty days. The Unit Team determines, by a "vote sheet," whether it is appropriate to move the inmate into the next phase of the SMU program. The Handbook indicates that because the SMU is a "behavioral driven program," the longer the inmate is "unsuccessful," "the longer [he or she] will remain in the program." It noted, however, that it is expected that inmates will complete all phases of the program within two years, and that if no progress is seen in the initial 12-to-18 months, then the Unit Team may transfer the inmate to a Long Term Segregation Unit or RHU.

In response to the summary judgment motion, Carter filed a brief and submitted

---

[2] The defendants also argued that any claim based on events that occurred prior to September 21, 2003 was time-barred under Pennsylvania's two-year statute of limitation. See 42 PA. CONS. STAT. ANN. § 5524. Carter agreed that only his 2003 placement and subsequent stay in the SMU were at issue.

3

declarations from himself and one other inmate asserting that the Inmate Handbook does not accurately represent the SMU's actual conditions or review process. In addition to restrictions on telephone usage, visitation, and various prison services, Carter described being confined to his cell (where the lights are allegedly never turned off) for 23 hours per day and alleged, among other things, that meals were withheld as a method of punishment.

The District Court granted the defendants' summary judgment motion based on its conclusion that, even assuming that Carter's SMU confinement triggered a liberty interest, the monthly reviews satisfied the prison's due process obligations. This appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and review de novo the District Court's entry of summary judgment. Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

A prisoner's procedural due process rights are violated when he is deprived of a legally cognizable liberty interest, which occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). When considering whether segregated housing triggers a legally cognizable liberty interest, courts must consider: (1) the duration of the confinement, and (2) the conditions of that confinement in relation to

4

other prison conditions.  Id. at 486-87.  If there is a liberty interest that has been adversely affected by administrative segregation, we have held that the prison meets its due process obligations if it provides meaningful, periodic reviews of the prisoner's placement in segregation.  See Shoats v. Horn, 213 F.3d 140, 145-47 (3d Cir. 2000) (applying Hewitt v. Helms, 459 U.S. 460 (1983), *overruled in part by*, Sandin v. Connor, 515 U.S. 572 (1995)).

Here, the District Court "assum[ed], without deciding, that the extended duration of Carter's SMU confinement . . . did spark a due process interest."  See Shoats, 213 F.3d at 144.[3]  We will proceed on the same assumption and express no opinion as to whether a liberty interest was triggered.

The District Court then determined that the SMU's monthly reviews were sufficient to protect Carter's due process rights and that his declaration was inadequate to defeat summary judgment.  See id at 145-46 (discussing administrative segregation monthly reviews).  Carter, however, had no opportunity to develop a factual record on the issue of whether he received adequate process (*i.e.*, meaningful periodic reviews during his confinement in administrative segregation) because he had no notice that the District

---

[3]      The District Court also determined that Carter's claim that he was entitled to a pre-transfer hearing was meritless.  Carter does not challenge this decision, and we note that, under Hewitt, the prison was "obligated to engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time *after* confining him to administrative segregation."  459 U.S. at 472 (emphasis added).

5

Court intended to consider dismissing his complaint on this basis. See Fed. R. Civ. P. 56©; Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (holding that a district court may sua sponte grant summary judgment only if it gives parties notice, so that the parties may "marshall [their] evidence to show that there is a genuine issue of material fact"). The defendants did not raise this issue in their summary judgment motion, and "[a] party has no obligation to respond to grounds that the moving party does not raise in a summary judgment motion." Sealey v. Giltner, 116 F.3d 47, 52 (2d Cir. 1997); see also Edwards v. Honeywell, Inc., 960 F.2d 673, 674 (7th Cir. 1992). The defendants' current argument that Carter had notice of the issue by the mere fact that the Handbook (which stated that reviews occurred) was in the record is unavailing, and Carter must be given an opportunity to develop additional facts relevant to this analysis.[4]

Based on the foregoing, we will vacate the District Court's judgment and remand for proceedings consistent with this opinion.

---

[4] The failure to raise this ground below does not preclude the defendants from raising it on remand. If the record is fully developed on this issue, it may well be that summary judgment is appropriate.

6