**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2261
_____

SAMIR M. MOUSSA,
                              Appellant

v.

PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE;
STACY GEYER, an agent and employee of the
PA Department of Public Welfare
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 07-cv-00009)
District Judge:  Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2011
_____

Before: SCIRICA, BARRY and VANASKIE, Circuit Judges

(Opinion Filed: January 21, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

        Samir Moussa was terminated as a staff physician at the Polk Center, a medical

facility operated by the Pennsylvania Department of Public Welfare ("DPW"), after an

investigation revealed his repeated sexual harassment of female co-workers. Moussa brought suit in the District Court, alleging that his termination resulted from discrimination on the basis of race, national origin, and sex, and that it was in retaliation for an earlier lawsuit. The Court granted Defendants' summary judgment motions in a thorough opinion. We will affirm for substantially the reasons articulated by the Court.

## I. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo, viewing the underlying facts in the light most favorable to the party opposing the motion. *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). A district court's grant of summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II. Background

Because we write primarily for the parties, we recite only those facts essential to our disposition of this appeal. Moussa, who is of Egyptian origin, began employment at the Polk Center on February 10, 1986. In 1999, his employment was terminated based on allegations that he had been suturing patients without anesthesia. After the charges were dismissed and he was reinstated, he brought a lawsuit alleging race and national-origin discrimination and received a settlement following a favorable jury verdict.

2

Years later, on August 4, 2005, a physical therapist named Colleen Dahl filed an Equal Employment Opportunity Discrimination Complaint alleging that Moussa had tried to kiss her both (1) earlier that day, and (2) shortly before Memorial Day. The complaint sparked an investigation, during the pendency of which Moussa was suspended without pay. In sending a letter confirming Moussa's suspension, Michael Hanwell, a Supervisory Analyst with the Bureau of Human Resources, Labor Relations, suggested to his supervisor that he "may recall Dr. Moussa" from the earlier lawsuit. (App. 281.)

The investigation revealed two other female co-workers who claimed that Moussa had sexually harassed them: Ellen Leakes alleged that Moussa had once "slammed her against the wall" and "had his tongue down her throat while he attempted to remove her clothing," and that the encounter left her bruised (*id.* 212), and Julianna Lewis alleged that Moussa had once "grabbed [her] and kissed [her] on [the] lips." (*Id.* 252.) Moussa consistently denied these allegations, suggesting that they were motivated by greed or jealousy.

During the investigation, on November 5, 2005, Defendant Stacey Geyer was hired as the director of the Polk Center. On December 20, 2005, a conference call was held among Geyer; Hanwell; and Nancy Murray, Geyer's direct supervisor, during which the investigation was discussed. The following day, Hanwell wrote to Geyer, stating that Polk would need to submit a "request to remove" to effectuate Moussa's termination, and Geyer confirmed that it would be done. On December 23, 2005, DPW issued a Request

3

to Effect Action, concluding that "the three employees are credible and that the conduct described by them actually occurred." (*Id.* 232.)

On December 29, 2005, Moussa was informed that he was terminated effective January 4, 2006. The termination letter was signed by Geyer, who testified at her deposition that she had no direct involvement with the investigation and was unfamiliar with the accusations against Moussa but signed the letter because she was instructed to do so by Murray.

Moussa filed suit on January 19, 2007. The District Court entered summary judgment in favor of Defendants on March 31, 2010, and Moussa timely appealed.

### III. Discussion

Moussa's primary contention on appeal is that the District Court erred in dismissing his claims of race and national origin discrimination. Specifically, he argues that the different discipline that two other employees received for workplace misconduct would allow a jury to conclude that he was discriminated against because of his race and national origin.[1]

In the absence of direct evidence, claims of discrimination under Title VII and Section 1983 are analyzed pursuant to a familiar burden-shifting framework.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stewart v. Rutgers*, 120 F.3d

---

[1] Moussa abandoned his claim of sex discrimination at oral argument before the District Court.

[2] Although Moussa had also brought claims of discrimination under 42 U.S.C. § 1981, Moussa does not appeal the District Court's conclusion that there is no private right of

4

426, 432 (3d Cir. 1997) ("Our application of the *McDonnell Douglas-Burdine* framework is applicable to Stewart's allegation of racial discrimination under 42 U.S.C. § . . . 1983." (footnote omitted)). Under that framework, if a plaintiff successfully establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its action. The plaintiff must then respond by showing that the defendant's proffered reason was pretextual. To prove that an explanation is pretextual, a plaintiff must "cast sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication or allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (alterations and internal quotation marks omitted).

In this case, the District Court presumed that Moussa had established a prima facie case of discrimination but held both that (1) Defendants had articulated a legitimate, nondiscriminatory reason for his termination (namely, his repeated sexual harassment of his co-workers), and (2) he had failed to raise an issue of fact with respect to whether this reason was pretextual.

In an attempt to show pretext, Moussa had pointed to two white males who were disciplined less harshly after also receiving complaints of workplace misconduct. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (providing that a plaintiff may show

action against a state actor under that statute.

pretext by demonstrating "that the employer treated other, similarly situated persons not of his protected class more favorably"). The District Court, however, ruled that neither comparator was similarly situated. We agree.

The first comparator identified by Moussa, Michael Winger, was accused of discussing his sexual experiences in the office and once placing his hands on a female co-worker's hips and pulling her towards him. After an investigation that included eleven witness interviews, DPW concluded that the allegations were unsubstantiated, and the complaint was dismissed. The second comparator, Curt Anderson, was found to have been engaged in a consensual sexual relationship with a subordinate employee. Although he was suspended during the investigation, his suspension was limited to thirty days after he brought a union grievance. He was ultimately demoted but not terminated.

The District Court correctly concluded that neither comparator was "similarly situated," such that the difference in the discipline that they received could support a jury's finding of pretext. As it observed, the allegations against Winger were substantially less serious than the allegations against Moussa, and a thorough investigation concluded that they were unfounded. And while Anderson's relationship with a subordinate may have been improper, there is no suggestion that it was involuntary, and certainly no suggestion that it involved the application of physical force. Insofar as DPW's investigation concluded that Moussa had repeatedly approached women and forcibly attempted to kiss them against their will, the Court correctly held that

the comparators were insufficiently similar to permit a jury to conclude that Defendants' proffered reason for terminating him was pretextual.[3]

## IV.  Conclusion

We will affirm the judgment of the District Court.

---

[3] Moussa raises two other arguments on appeal, neither meritorious.  First, he suggests that Geyer's "mendacity" at her deposition would allow a fact finder to conclude that she acted out of retaliatory intent.  In our judgment, a jury could only interpret Geyer's deposition transcript as evidence of retaliatory intent by engaging in rank speculation; Geyer was hired late in the investigation that led to Moussa's termination, and it is unsurprising that she recalls few of its details.  Second, Moussa argues that Geyer is liable under Section 1983 as the "cat's paw" because, even if she did not have discriminatory intent, she was the vehicle through which the discriminatory intent of others was realized. Insofar as Moussa has failed to proffer evidence from which a fact finder could conclude that *anyone* at DPW acted with discriminatory or retaliatory intent, we need not consider whether the cat's paw theory is cognizable under Section 1983.